IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JEFFREY HORTON,                           :
                                          :
        Plaintiff,                        :
                                          :
v.                                        :        Civil Action No.
                                          :        1:11-CV-03210-TWT-LTW
FIRST PREMIER BANK; HSBC BANK             :
USA, N.A.; SALLIE MAE, INC.;              :
UNITED STUDENT AID FUNDS, INC.;           :
META FINANCIAL GROUP, INC.;               :
FINGERHUT COMPANIES, INC., a/k/a          :
FINGERHUT DIRECT MARKETING,               :
                                          :
        Defendants.                       :

## MAGISTRATE JUDGE'S ORDER AND FINAL REPORT AND RECOMMENDATION

This matter is presently before the Court on motions to dismiss/for judgment on the pleadings from all Defendants and various non-dispositive motions from Plaintiff Jeffrey Horton ("Plaintiff").   For the reasons outlined below, the undersigned **RECOMMENDS** the following:

1.    Defendant HSBC Bank USA, N.A.'s Motion to Dismiss be **GRANTED**, (Docket Entry [92].

2.    Defendant First Premier Bank's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) be **GRANTED**, (Docket Entry [94]);

3.  Defendants Bluestem Brands, Inc. d/b/a Fingerhut and Meta Financial Group, Inc.'s Motion to Dismiss be **GRANTED**, (Docket Entry [98]);

4.  Defendants Sallie Mae, Inc. and United Student Aid Funds, Inc.'s Motion for Judgment on the Pleadings be **GRANTED**, (Docket Entry [116]).

Additionally, the undersigned **ORDERS** the following:

1.  Plaintiff's Motion to Strike and Dismiss Redundant Motions Pursuant to Rule 12(f) is **DENIED**, (Docket Entry [100]);

2.  Plaintiff's Request for Judicial Notice in Regard of Defendants Sallie Mae, Inc. and United Student Aid Funds, Inc. and Reply to Answer to Complaint is **DENIED**, (Docket Entry [103]);

3.  Plaintiff's Motion for Reconsideration and Response in Opposition to Motions to Stay Proceedings is **DENIED AS MOOT**, (Docket Entry [104]);

4.  Plaintiff's Motion to Add Party Defendants Webbank, Kelly Barnett, and Mark Howard is **DENIED**, (Docket Entry [107]);

5.  Defendants Sallie Mae, Inc. and United Student Aid Funds, Inc.'s Motion to Stay is **DENIED AS MOOT**, (Docket Entry [117]);

6.  Plaintiff's Motion to Strike Pursuant to Fed. R. Civ. P. 12(f) is **DENIED**, (Docket Entry [119]);

2

7.    Plaintiff's Motion for Leave to File Second Amended Complaint is **DENIED**,

Docket Entry [122]); and

8.    Plaintiff's Motion for Declaratory Judgment, Certification of Real Parties in

Interest, and For a More Definite Statement is **DENIED AS MOOT**, (Docket

Entry [130]).

## DEFENDANTS' MOTIONS TO DISMISS/FOR JUDGMENT ON THE PLEADINGS

Plaintiff asserts claims against Defendants for violations of the Fair Credit

Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., the Fair Debt Collection Practices

Act ("FDCPA"), 15 U.S.C. § 1692 et seq., and the Federal Trade Commission Act

("FTC Act"), 15 U.S.C. § 45(a).  (Am. Compl., Docket Entry [26]).  All Defendants

move to dismiss Plaintiff's Amended Complaint in its entirety.[1]

## I.    **FACTUAL BACKGROUND**[2,3]

_____

[1] Plaintiff names several individual Defendants, who are officers of Defendant-corporations, for the first time in his Amended Complaint.  However, there are no proofs of service on the docket to confirm that Plaintiff ever served any of the individual Defendants with his Amended Complaint.  Therefore, this Court does not consider the individuals to be parties to this action.

[2]    Most of the specific factual allegations appear in Plaintiff's original Complaint, not Plaintiff's Amended Complaint.  "As a general rule, an amended complaint supersedes and replaces the original complaint unless the amendment specifically refers to or adopts the earlier pleading."  Varnes v. Local 91, Glass Bottle

3

In November 2007, Plaintiff became aware that his identity had been compromised and numerous accounts of all types were fraudulently opened in his name. (Compl. ¶ 8, Docket Entry [3]).  Plaintiff notified the authorities and filed a police report. (Id.) Plaintiff also contacted Defendant-creditors to advise them of the issue and requested an investigation of the fraudulently opened accounts.  (Id. ¶ 9).  Plaintiff's creditors concluded the accounts indeed were fraudulently opened, and as a result, promptly removed the negative items from Plaintiff's credit report.  (Id.)

In late 2008 to early 2009, other unauthorized accounts began to appear on Plaintiff's credit report. (Compl. ¶ 10).  Plaintiff contacted Defendant-creditors again.

---

Blowers Ass'n of U.S. and Canada, 674 F.2d 1365, 1370 n.6 (11th Cir. 1982); see also Lowery v. Ala. Power Co., 483 F.3d 1184, 1219 (11th Cir. 2007) ("Under . . . federal law, an amended complaint supersedes the initial complaint and becomes the operative pleading in the case.").  Plaintiff does not specifically adopt his original Complaint in his Amended Complaint, but he does state that the Amended Complaint is intended to relate back to the date of the original Complaint.  It is clear from Plaintiff's briefs that he used this language in an effort to incorporate the allegations of his original Complaint into his Amended Complaint.  In light of Plaintiff's status as a pro se litigant, this Court will consider Plaintiff's Complaint and Amended Complaint together.

[3] On a Rule 12(b)(6) motion to dismiss, this Court must consider the allegations in a plaintiff's complaint as true and view the allegations in the light most favorable to the plaintiff.  Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003).  Therefore, this Court  has set forth the relevant factual background here as recounted in Plaintiff's Complaint and Amended Complaint.

4

(Id.) Plaintiff sent a formal written dispute along with a request for validation to each Defendant. (Id. ¶ 11). Plaintiff also disputed the tradelines in writing with the three credit bureaus (Equifax, TransUnion, and Experian). (Id. ¶ 12). Each of the credit bureaus opened an investigation, and each Defendant informed the credit bureaus that Plaintiff's accounts had been verified. (Id.) Plaintiff asked that each Defendant confirm the manner in which his alleged accounts were verified, but each Defendant declined to respond. (Id. ¶ 13). As a result of Defendants' (in)actions, Plaintiff was unable to refinance his mortgage loan at a lower rate in July 2010, and Plaintiff has been denied credit from other institutions. (Id. ¶¶ 14, 16).

Defendant HSBC Bank USA, N.A. ("HSBC") uses instruments of interstate commerce to facilitate the opening of accounts and the collection of debts owed, (Am. Compl. ¶ 6); has received numerous written requests from Plaintiff to verify the account listed on Plaintiff's consumer profile, (Id. ¶ 9); has received supporting documents from Plaintiff on numerous occasions to assist HSBC in its investigation of Plaintiff's account, (Id. ¶ 10); has untruthfully reported to the three credit bureaus that Plaintiff's account has been verified on numerous occasions, (Id. ¶ 11); has failed to provide proof of verification to Plaintiff as Plaintiff requested in writing on numerous occasions, (Id. ¶ 12); and has refused to remove the unverified account from Plaintiff's consumer credit

5

profile despite numerous written requests from Plaintiff, (Id. ¶ 13).

Defendant First Premier Bank ("First Premier") uses instruments of interstate commerce to facilitate the opening of accounts and the collection of debts owed, (Am. Compl. ¶ 16); has received numerous written requests from Plaintiff to verify the account listed on Plaintiff's consumer profile, (Id. ¶ 19); has received supporting documents from Plaintiff on numerous occasions to assist First Premier in its investigation of Plaintiff's account, (Id. ¶ 20); has reported to the three credit bureaus that Plaintiff's account has been verified on numerous occasions, (Id. ¶ 21); has failed to provide proof of verification to Plaintiff as Plaintiff requested in writing on numerous occasions, (Id. ¶ 22); and refused to remove the unverified account from Plaintiff's consumer credit profile for nearly two (2) years, but recently admitted that the account was fraudulent, (Id. ¶ 23).

Defendant Sallie Mae, Inc. ("Sallie Mae") uses instruments of interstate commerce to facilitate the opening of accounts and the collection of debts owed, (Am. Compl. ¶ 26); has received numerous written requests from Plaintiff to verify the account listed on Plaintiff's consumer profile, (Id. ¶ 29); has received supporting documents from Plaintiff on numerous occasions to assist Sallie Mae in its investigation of Plaintiff's account, (Id. ¶ 30); has reported to the three credit bureaus that Plaintiff's

6

account has been verified on numerous occasions, (Id. ¶ 31); has failed to provide proof of verification to Plaintiff as Plaintiff requested in writing on numerous occasions, (Id. ¶ 32); and has refused to remove the unverified account from Plaintiff's consumer credit profile despite numerous written requests from Plaintiff, (Id. ¶ 33).

Defendant United Student Aid Funds, Inc. ("USA Funds") uses instruments of interstate commerce to facilitate the opening of accounts and the collection of debts owed, (Am. Compl. ¶ 36); has received numerous written requests from Plaintiff to verify the account listed on Plaintiff's consumer profile, (Id. ¶ 39); has received supporting documents from Plaintiff on numerous occasions to assist USA Funds in its investigation of Plaintiff's account, (Id. ¶ 40); has failed to provide proof of verification of Plaintiff's account as Plaintiff requested in writing, yet continues to harass Plaintiff by demanding payment for a debt he does not owe, (Id. ¶ 41).

Defendant Meta Financial Group, Inc. ("Meta") uses instruments of interstate commerce to facilitate the opening of accounts and the collection of debts owed, (Am. Compl. ¶¶ 44-45); has received numerous written requests from Plaintiff to verify the account listed on Plaintiff's consumer profile, (Id. ¶ 48); has received supporting documents from Plaintiff on numerous occasions to assist Meta in its investigation of Plaintiff's account, (Id. ¶ 49); has reported to the three credit bureaus that Plaintiff's

7

account has been verified on numerous occasions, (Id. ¶ 50); has failed to provide proof of verification to Plaintiff as Plaintiff requested in writing on numerous occasions, (Id. ¶ 51); and has refused to remove the unverified account from Plaintiff's consumer credit profile despite numerous written requests from Plaintiff, (Id. ¶ 52).

Defendant Bluestem Brands, Inc. d/b/a Fingerhut ("Bluestem") uses instruments of interstate commerce to facilitate the opening of accounts and the collection of debts owed, (Am. Compl. ¶ 58); has received numerous written requests from Plaintiff to verify the account listed on Plaintiff's consumer profile, (Id. ¶ 61); has received supporting documents from Plaintiff on numerous occasions to assist Bluestem in its investigation of Plaintiff's account, (Id. ¶ 62); has reported to the three credit bureaus that Plaintiff's account has been verified on numerous occasions, (Id. ¶ 63); has failed to provide proof of verification to Plaintiff as Plaintiff requested in writing on numerous occasions, (Id. ¶ 64); and has refused to remove the unverified account from Plaintiff's consumer credit profile despite Plaintiff's numerous written requests, (Id. ¶ 65).

Defendants maintain a substantial course of interstate trade in the offering of various subprime financial products at high costs to consumers. (Am. Compl. ¶ 66). Many of the products marketed and provided to the public by Defendants come with exorbitant interest rates and/or excessive annual fees, monthly fees, and service charges.

8

(Id. ¶ 67).   Defendants market these usury products towards the unsavvy and the misinformed by offering "easy access to credit" primarily to those consumers relegated to the lower income geographic.  (Id. ¶ 68).   Defendants offer these dubious products under a myriad of disguisable names, such as Bluestem, Orchard, Centennial, and Aventium, while others operate under names such as Sallie Mae, United, or USA to give the public the impression they are government-sponsored enterprises when in fact they are private for-profit corporations.  (Id. ¶ 69).   A number of Defendants are currently under investigation or have recently settled cases brought by various State District Attorneys and the United States Attorney's Office for deceptive business practices in commerce.  (Id. ¶ 70).

## II.  LEGAL ANALYSIS

### A.    Rule 12(b)(6) Motion to Dismiss Standard

Dismissal is warranted under Rule 12(b)(6) if, assuming the truth of the factual allegations in the plaintiff's complaint, there is a dispositive legal issue that precludes relief.  Neitzke v. Williams, 490 U.S. 319, 326-27 (1989); Brown v. Crawford Cnty., Ga., 960 F.2d 1002, 1010 (11th Cir. 1992).  In ruling on a 12(b)(6) motion, the court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff.  Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003) (per

AO 72A
(Rev.8/82)

curiam).  Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of the plaintiff's allegations.  Aldana v. Del Monte Fresh Produce, N.A., Inc., 416 F.3d 1242, 1248 (11th Cir. 2005); see also Iqbal, 556 U.S. at 681 (stating conclusory allegations are "not entitled to be assumed true").

A complaint must be dismissed if the facts as pled do not state a claim for relief that is plausible on its face.  See Iqbal, 556 U.S. at 678.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  Factual allegations in a complaint need not be detailed but "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations and emphasis omitted).

**B.     Rule 12(c) Motion for Judgment on the Pleadings Standard**

Judgment on the pleadings is appropriate when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law based on the substance of the pleadings and any judicially noticed facts.  Douglas Asphalt Co. v.

10

Qore, Inc., 541 F.3d 1269, 1273 (11th Cir. 2008). A motion for judgment on the pleadings is governed by the same standard as a motion to dismiss for failure to state a claim for relief. Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir. 1998).

**C.     Plaintiff's Fair Credit Reporting Act Claim**

Plaintiff alleges that Defendants violated the following provisions of the FCRA: 15 U.S.C. §§ 1681g(e)(1)(A), 1681i(a)(1)(A), 1681i(a)(5)(A)(i), 1681s-2(a)(1)(A), 1681s-2(a)(1)(B)(i), 1681s-2(a)(6)(B), 1681s-2(b)(1)(D), 1681s-2(b)(1)(E), 1681s-2(b)(1)(E)(ii), and 1681s-2(b)(2). Plaintiff's claims asserted pursuant to 15 U.S.C. §§ 1681g and 1681i should fail as a matter of law because Plaintiff does not allege that any Defendant is a consumer reporting agency. Plaintiff's claims asserted pursuant to 15 U.S.C. § 1681s-2(a) also should fail as a matter of law because there is no private right of action pursuant to this provision of the FCRA. Lastly, Plaintiff's claims asserted pursuant to 15 U.S.C. § 1681s-2(b) should be dismissed because the allegations in Plaintiff's Complaint and Amended Complaint do not state a plausible claim for relief.

The FCRA was enacted to ensure that "consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to

11

the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681(b).  The FCRA defines "consumer reporting agency" as "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports." 15 U.S.C. § 1681a(f).

In 1996, Congress amended the FCRA to also impose duties upon persons who furnish information to consumer reporting agencies. See Ingram v. Green & Cooper, Attorneys L.L.P., No. 1:11-cv-03475-TWT-RGV, 2012 WL 1884598, at *4 (N.D. Ga. Apr. 20, 2012).  The 1996 amendments added section 1681s-2 to regulate furnishers of information. Id. This is the only provision of the FCRA that pertains to furnishers of information.  See Jackson v. Genesys Credit Mgmt., No. 06-61500-CIV, 2007 WL 2113626, at *2 (S.D. Fla. July 23, 2007).

Here, it is undisputed that Plaintiff does not allege that any Defendant is a consumer reporting agency under the FCRA.  On the other hand, this Court concludes

12

that all Defendants, except USA Funds,[4] qualify as furnishers of information[5] based on Plaintiff's allegation that Defendants HSBC, First Premier, Sallie Mae, Meta, and Bluestem reported to the three credit bureaus (Experian, Equifax, and Trans Union) that they had verified Plaintiff's respective accounts with them. (Am. Compl. ¶¶ 11, 21, 31, 50, 63). As furnishers of information, only section § 1681s-2 of the FCRA applies to all Defendants, except USA Funds. Therefore, Plaintiff's claims asserted against each Defendant pursuant to 15 U.S.C. §§ 1681g and 1681i should fail as a matter of law.

Section 1681s-2(a) prohibits furnishers of information from providing false information to consumer reporting agencies. See 15 U.S.C. § 1681s-2(a). Plaintiff's claims center on his assertion that Defendants reported false information about his accounts to the three credit bureaus. Unfortunately, the prohibitions set forth in section 1681s-2(a) do not create a private right of action. See Green v. RBS Nat'l Bank, 288 F. App'x 641, 642 (11th Cir. 2008); Ingram, 2012 WL 1884598, at *4. Consequently, Plaintiff's claims against Defendants asserted pursuant to 15 U.S.C. § 1681s-2(a) should

---

[4] Plaintiff does not make any allegations about USA Funds reporting information to any of the three credit bureaus about his account, as he does for the other four Defendants. Because Plaintiff does not allege that USA Funds is a consumer reporting agency or a furnisher of information, there is no factual basis from which this Court can conclude the FCRA applies to USA Funds.

[5] The FCRA does not define "furnishers of information."

13

also fail as a matter of law.

That leaves only Plaintiff's section 1681s-2(b) claim. Pursuant to Section 1681s-2(b) furnishers of information are required to investigate and promptly respond to notices of consumer disputes. Specifically, once a consumer reporting agency receives notice of disputed information from a consumer, the agency must provide notice of the dispute "to any person who provided any item of information in dispute," and the notice must "include all relevant information regarding the dispute that the agency has received from the consumer . . . ." 15 U.S.C. § 1681i(a)(2)(A). The person who receives the notice from the consumer reporting agency must then investigate the disputed information, report the results of the investigation to the consumer reporting agency, and make any necessary modifications. 15 U.S.C. § 1681s-2(b)(1). To survive a motion to dismiss on a 15 U.S.C. § 1681s-2(b) claim, the plaintiff must allege that the defendant received the proper notice from the consumer reporting agency pursuant to 15 U.S.C. § 1681i(a)(2) and that the defendant failed to uphold its duties pursuant 15 U.S.C. § 1681s-2(b). Pinckney v. SLM Fin. Corp., 433 F. Supp. 2d 1316, 1319 (N.D.Ga. 2005).

In the Amended Complaint, Plaintiff makes no allegation that he notified a consumer reporting agency about disputed information from any Defendant, nor does he allege any Defendant received notice of a dispute from a consumer reporting agency.

AO 72A
(Rev.8/82)

However, in the original Complaint, Plaintiff alleges that after the unauthorized accounts began to appear on his consumer report in late 2008 to early 2009, he disputed the tradelines in writing with the three credit bureaus, each of the three credit bureaus opened their own investigations, and each Defendant responded that Plaintiff's accounts had been verified. (Compl. ¶ 12). From these allegations, it is reasonable to infer that Defendants received notice of a dispute regarding Plaintiff's accounts from the credit bureaus Plaintiff contacted, which prompted Defendants to respond to the bureaus that they had verified Plaintiff's accounts. Nevertheless, Plaintiff's section 1681s-2(b) claim should be subject to dismissal because the allegations in Plaintiff's Complaint and Amended Complaint do not show that any Defendant failed to uphold its obligations under the FCRA.

As previously stated, after receiving notice of a dispute from the consumer reporting agency about inaccurate information, a furnisher of information is required to: (1) conduct an investigation with respect to the disputed information; (2) review all of the relevant information provided in the notice from the consumer reporting agency; (3) report the results of its investigation to the consumer reporting agency; (4) if the investigation reveals incomplete or inaccurate information, report those findings to the other major consumer reporting agencies to which it provided the incomplete or

15

inaccurate information; and (5) modify, delete, or permanently block the reporting of any information disputed by a consumer that it finds to be inaccurate or incomplete or that cannot be verified after reinvestigation.  15 U.S.C. § 1681s-2(b)(1).

Plaintiff does not allege any facts to establish that any Defendant failed to conduct an investigation after it received notice from the credit bureaus of Plaintiff's dispute, failed to review any information the credit bureaus provided in their notice, or failed to report the results of its investigation to the credit bureaus.  To the contrary, Plaintiff alleges that he provided supporting documents to each Defendant in connection with their respective investigations of his accounts, and each Defendant reported to the credit bureaus that it had verified Plaintiff's account.  In addition, there are no allegations in Plaintiff's Complaint or Amended Complaint that suggests that any Defendant's investigation revealed incomplete or inaccurate information with respect to Plaintiff's account, such that Defendant was required to report the findings to the credit bureaus and correct the information.  Thus, it appears that Plaintiff disagrees with Defendants' conclusions that the accounts belong to him.  Simply disagreeing with the conclusions Defendants reached is insufficient to establish a claim under section 1681s-2(b)(1) for failure to conduct an investigation, failure to review the notice of dispute from the credit bureaus, or failure to report the investigation results to the consumer reporting agencies.

16

Plaintiff does allege that he asked each Defendant to confirm the manner in which it verified his alleged account, and each Defendant failed to do so. Defendant's silence in response to Plaintiff's request for verification does not run afoul of section 1681s-2(b)(1). As such, the allegations in Plaintiff's Complaint and Amended Complaint fail to state a claim under 15 U.S.C. § 1681s-2(b). See, e.g., Peart v. Shippie, 345 F. App'x 384, 386 (11th Cir. 2009) (concluding the plaintiff's complaint failed to state a FCRA claim because the plaintiff did not allege that the furnisher of information failed to conduct an investigation into the plaintiff's credit history after being notified of a dispute by a credit reporting agency). Accordingly, the undersigned **RECOMMENDS** that Defendants' requests to dismiss Plaintiff's FCRA claim be **GRANTED**.

**D.** **Plaintiff's Fair Debt Collection Practices Act Claim**

"The FDCPA seeks to remedy abusive, deceptive, and unfair debt collection practices by debt collectors against consumers." Frazier v. Absolute Collection Serv., Inc., 767 F. Supp. 2d 1354, 1363 (N.D. Ga. 2011) (citing 15 U.S.C. § 1692(e)); see also LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1190 (11th Cir. 2010). "To prevail on a FDCPA claim, a plaintiff must establish that: (1) []he has been the object of collection activity arising from a consumer debt; (2) the defendant attempting to collect the debt qualifies as a debt collector under the Act; and (3) the defendant has engaged

17

in a prohibited act or has failed to perform a requirement imposed by the FDCPA."

Frazier, 767 F. Supp. 2d at 1363 (internal quotation marks and citations omitted). A

"debt collector" is "any person who uses any instrumentality of interstate commerce or

the mails in any business the principal purpose of which is the collection of any debts,

or who regularly collects or attempts to collect, directly or indirectly, debts owed or due

or asserted to be owed or due another." 15 U.S.C. § 1692a(6). For purposes of 15

U.S.C. § 1692f(6), the term "debt collector" also includes "any person who uses any

instrumentality of interstate commerce or the mails in any business the principal

purposes of which is the enforcement of security interests." 15 U.S.C. § 1692f(6).

Defendants argue Plaintiff's FDCPA claim fails because Plaintiff failed to

adequately plead that any Defendant is a debt collector under the statute. This Court

agrees. Plaintiff alleges that each Defendant "is a corporation that uses instruments of

interstate commerce to facilitate the opening of accounts and collection of debts owed."

(Am. Compl. ¶¶ 6, 16, 26, 36, 44-45, 58). Reciting the statutory definition without

offering any facts in support is insufficient to plausibly allege that Defendants qualify

as debt collectors under the FDCPA. On this basis alone, Plaintiff's FDCPA claim

should be dismissed. See Mills v. JP Morgan Chase Bank, No. 1:11-CV-3709-JEC-

LTW, 2012 WL 4086508, at *9 (N.D. Ga. July 23, 2012) (concluding that plaintiffs'

18

complaint was subject to dismissal because, among other things, "[p]laintiffs fail to allege any specific facts indicating that [the defendant] regularly attempts to collect debts, that the principal purpose of its business is the collection of debts, or that the principal purpose of its business is the enforcement of security interests"); Correa v. BAC Home Loans Servicing LP, No. 6-11-cv-1197-Orl-22DAB, 2012 WL 1176701, at *12 (M.D. Fla. Apr. 9, 2012) (finding that plaintiff, who cited the general definition for "debt collector" and in a conclusory manner stated that defendants are debt collectors, failed to allege facts sufficient to state a claim for relief under the FDCPA); see also Iqbal, 556 U.S. at 678 (stating that "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements do not suffice").

Furthermore, Plaintiff fails to allege any facts to show that he has been the object of collection activity arising from a consumer debt. This, too, is reason to dismiss Plaintiff's FDCPA claim for failure to state a claim. Accordingly, the undersigned **RECOMMENDS** that Defendants' request to dismiss Plaintiff's FDCPA claim be **GRANTED**.

### E.     Plaintiff's Federal Trade Commission Act Claim

Section 5 of the FTC Act makes it unlawful to engage in "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or

affecting commerce." 15 U.S.C. § 45(a)(1). Although Plaintiff mentions section 5 of the FTC Act in passing in his Amended Complaint, Plaintiff concedes that there is no private right of action under this statutory provision. See Jeter v. Credit Bureau, Inc., 760 F.2d 1168, 1174 (11th Cir. 1985) ("Most importantly, consumers were given a private right of action to enforce the provisions of the FDCPA against debt collectors, 15 U.S.C.A. § 1692k, a right which does not exist under the FTC Act."); Valet Apartment Servs., Inc. v. Atlanta Journal and Constitution, 865 F. Supp. 828, 833 (N.D. Ga. 1994) (concluding that there is no private right of action under section 5 of the FTC Act). As such, the undersigned **RECOMMENDS** that Defendants' request to dismiss Plaintiff's FTC Act claim be **GRANTED**.

### F.   Plaintiff's Fair and Accurate Credit Transactions Act Claim

In the original Complaint, Plaintiff makes a single reference to the Fair and Accurate Credit Transactions Act ("FACTA"), 15 U.S.C. § 1601 et seq. (Compl. ¶ 1). Plaintiff, however, did not identify any specific provision of the FACTA that he contends Defendants violated, nor did Plaintiff set forth any facts to indicate the manner in which he asserts Defendants violated the FACTA. Plaintiff removed the reference to the FACTA in his Amended Complaint. As such, the undersigned **RECOMMENDS** that Plaintiff's FACTA claim, to the extent asserted, be **DISMISSED**.

20

## <u>PLAINTIFF'S MOTION TO STRIKE AND DISMISS REDUNDANT MOTIONS PURSUANT TO RULE 12(F)</u>

Plaintiff moves to strikes Defendants HSBC, First Premier, Bluestem and Meta's (collectively "Defendants" for purposes of this motion) motions to dismiss on the ground that these Defendants' previous motions to dismiss raised the same arguments and were cast down by this Court in earlier rulings.

Rule 12 of the Federal Rules of Civil Procedure allows this court to "strike from a *pleading* an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter . . . on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading." Fed. R. Civ. P. 12(f)(2) (emphasis added).  Rule 7 of the Federal Rules of Civil Procedure defines pleadings as: "(1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (4) a third-party complaint; (5) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer." Fed. R. Civ. P. 7(a).  Defendants' motions to dismiss are not "pleadings," and as such, cannot be stricken pursuant to Rule 12(f) as Plaintiff requests.

Even if Rule 12(f) was the proper procedural mechanism, this Court would still

21

decline to strike Defendants' motions to dismiss.  Contrary to Plaintiff's argument, the initial round of Defendants' motions to dismiss were based on Plaintiff's failure to properly serve the Complaint or Amended Complaint on Defendants.  Indeed, none of Defendants' initial motions to dismiss addressed the substance of Plaintiff's Complaint.  Because this Court stepped in to assist Plaintiff with correcting the service defects, the Court denied Defendants' motions to dismiss based on service defects as moot.  Defendants' motions to dismiss that are currently pending address—for the first time—the legal sufficiency of the allegations in Plaintiff's Complaint and Amended Complaint.  Therefore, Defendants' motions are not redundant and are properly before the Court.  Accordingly, the undersigned **DENIES** Plaintiff's Motion to Strike and Dismiss Redundant Motions Pursuant to Rule 12(f).

## PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE IN REGARD OF DEFENDANTS SALLIE MAE, INC. AND UNITED STUDENT AID FUNDS, INC. AND REPLY TO ANSWER TO COMPLAINT

Plaintiff asks this Court to take judicial notice of the Privacy Policy Notice that he apparently received from USA Funds, Inc. c/o Sallie Mae Post Claim Assistance MC E2142.  The Privacy Policy Notice outlines USA Funds's philosophy on protecting the privacy and security of the personal and financial information of its customers.

Rule 201 of the Federal Rules of Evidence permits this Court to take judicial

22

notice of a fact "that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The Eleventh Circuit has explained that "the kinds of things about which courts ordinarily take judicial notice are (1) scientific facts: for instance, when does the sun rise or set; (2) matters of geography: for instance, what are the boundaries of a state; or (3) matters of political history: for instance, who was president in 1958." Shahar v. Bowers, 120 F.3d 211, 214 (11th Cir. 1997).

The Court declines to take judicial notice of the Privacy Policy Notice, as it is inconsistent with the types of things of which courts ordinarily take judicial notice. More importantly, it is unclear to this Court how the Privacy Policy Notice has any bearing on the issues in this litigation. As such, the undersigned **DENIES** Plaintiff's Request for Judicial Notice in Regard of Defendants Sallie Mae, Inc. and United Student Aid Funds, Inc. and Reply to Answer to Complaint.

## PLAINTIFF'S MOTION FOR RECONSIDERATION AND RESPONSE IN OPPOSITION TO MOTIONS TO STAY PROCEEDINGS

Plaintiff moves this Court to reconsider its decision to stay the proceedings pending the Court's ruling on Defendants' dispositive motions. The undersigned has

23

addressed Defendants' pending motions to dismiss / for judgment on the pleadings in this Order and Report and Recommendation.   As a result, Plaintiff's Motion for Reconsideration and Response in Opposition to Motions to Stay Proceedings is **DENIED AS MOOT**.

## PLAINTIFF'S MOTION TO ADD PARTY DEFENDANTS WEBBANK, KELLY BARNETT, AND MARK HOWARD

Plaintiff moves to add Defendants Webbank, Kelly Barnett, and Mark Howard to this lawsuit.  According to Plaintiff, Webbank, as directed, controlled, managed, and overseen by its President, Kelly Barnett, and Chief Financial Officer, Mark Howard, is reporting false, inaccurate, and unvalidated information to the credit reporting agencies. On October 13, 2012, Plaintiff's credit monitoring service notified him of a "new" account from Webbank that appears on his credit profile.  Plaintiff contends Webbank's conduct is similar to the conduct of the other Defendants in this action.

Rule 20(a) of the Federal Rules of Civil Procedure allows a defendant to be joined in an action if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20(a)(2).  Courts in the Eleventh

24

Circuit apply the "logical relationship" test to determine whether claims arise from the same "series of transactions or occurrences." See Bollea v. Clem, --- F. Supp. 2d ---, No. 8:13-cv-00001-T-27AEP, 2013 WL 1296076, at *3 (M.D. Fla. Mar. 28, 2013) (internal quotation marks and citations omitted). "Under this test, a logical relationship exists if the claims rest on the same set of facts or the facts, on which one claim rests, activate additional legal rights supporting the other claim. In other words, there is a logical relationship when the same operative facts serve as the basis of both claims." Id. (internal citations omitted). "The logical relation test is a loose standard which permits a broad realistic interpretation in the interest of avoiding a multiplicity of suits." Plant v. Blazer Fin. Serv., Inc. of Ga., 598 F.2d 1357, 1361 (5th Cir. 1979) (internal quotation marks and citation omitted).[6]

The limited allegations in Plaintiff's motion do not allow this Court to conclude that Webbank and its officers' alleged unlawful conduct arises out of the same transaction, occurrence, or series of transactions or occurrences as those alleged in Plaintiff's Amended Complaint. Plaintiff does not explain how Webbank is related to any of the Defendants or how Webbank was involved in any of the alleged fraudulent

---

[6] In Bonner v. City of Pritchard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent, all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

25

accounts maintained by Defendants.  In fact, Plaintiff's admission that he was advised of a "new" account on October 13, 2012, for which he contends Webbank is responsible, suggests that Webbank and its officers' conduct arises out of a transaction or occurrence that is separate and distinct from those alleged in Plaintiff's Amended Complaint.  The only common thread between the current Defendants and Webbank and its officers appears to be that the "new" alleged fraudulent account from Webbank is the result of Plaintiff's identity being compromised.  This commonality is insufficient to establish that Plaintiff's claims against Webbank arose out of the "same transaction, occurrence, or series of transactions or occurrences" as Defendants.  Accordingly, the undersigned **DENIES** Plaintiff's Motion to Add Party Defendants Webbank, Kelly Barnett, and Mark Howard.[7]

In Plaintiff's reply brief, Plaintiff also asks this Court to add Capital One Financial Corporation ("Capital One") and Richard Fairbank and Nigel Morris, who are presumably officers of Capital One, as party Defendants because Plaintiff recently learned that HSBC sold his alleged account to Capital One.  It is well settled in the

---

[7] After filing the Motion to Add Party Defendants Webbank, Kelly Barnett, and Mark Howard on October 17, 2012, Plaintiff moved for leave to file a Second Amended Complaint on March 1, 2013.  Notably absent from Plaintiff's proposed Second Amended Complaint is any mention of Webbank, Barnett, or Howard.

26

Eleventh Circuit that courts need not address arguments raised for the time in a reply brief, even when the litigant is pro se. See Timson v. Sampson, 518 F.3d 870, 874 (11th Cir. 2008). Accordingly, the undersigned **DENIES** Plaintiff's request to add Capital One, Richard Fairbank, and Nigel Morris as party Defendants.

## DEFENDANTS SALLIE MAE, INC. AND UNITED STUDENT AID FUNDS, INC.'S MOTION TO STAY

Defendants Sallie Mae and USA Funds move this Court for a stay in the proceedings pending the Court's ruling on all Defendants' pending dispostive motions. The undersigned entered an Order on October 1, 2012, staying "all proceedings, including discovery" in this case in response to Defendant First Premier's motion to stay. Docket Entry [99]. As such, this Court need not stay this case a second time. Furthermore, because the undersigned addresses Defendants' pending dispositive motions in this Order and Report and Recommendation, Defendants Sallie Mae and USA Funds's request to stay the proceedings is now moot. Accordingly, the undersigned **DENIES AS MOOT** Defendants Sallie Mae, Inc. and United Student Aid Funds's Motion to Stay.

## PLAINTIFF'S MOTION TO STRIKE PURSUANT TO FED. R. CIV. P. 12(F)

Plaintiff moves to strike Defendants Sallie Mae and USA Funds's Motion for

27

Judgment on the Pleadings as premature because, according to Plaintiff, this Court has not given any indication that the pleadings are closed.

Rule 12 of the Federal Rules of Civil Procedure allows this court to "strike from a *pleading* an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter . . . on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading." Fed. R. Civ. P. 12(f)(2) (emphasis added). Rule 7 of the Federal Rules of Civil Procedure defines pleadings as: "(1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (4) a third-party complaint; (5) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer." Fed. R. Civ. P. 7(a). Defendants Sallie Mae and USA Funds's Motion for Judgment on the Pleadings is not itself a "pleading," and as such, it cannot be stricken pursuant to Rule 12(f) as Plaintiff requests.

Even if Rule 12(f) gave this Court the authority to strike Defendants Sallie Mae and USA Funds's Motion for Judgment on the Pleadings, this Court would decline to do so because the motion is not premature. Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, "[a]fter the pleadings are closed–but early enough not to delay trial–a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Plaintiff

28

filed his Complaint on September 21, 2011, along with his request to proceed in forma pauperis.  Docket Entry [1].  Plaintiff amended his Complaint on November 18, 2011.  Docket Entry [26].  Defendants Sallie Mae and USA Funds answered Plaintiff's Complaint on September 21, 2012.  Docket Entries [95, 96].  Upon Defendants Sallie Mae and USA Funds's filing of their Answer, the pleadings closed.  See M.R. v. Bd. of Sch. Comm'r of Mobile Cnty., No.11-0245-WS-C, 2012 WL 2931263, at *1 n.3 (S.D. Ala. July 18, 2012) ("[A]bundant precedent confirms that this innocuous phrase ["after the pleadings are closed"] means nothing more than the filing of a complaint and answer.").  Therefore, Defendants Sallie Mae and USA Funds's Motion for Judgment on the Pleadings, which was filed on January 28, 2013, was not premature.  Additionally, discovery has not yet begun in this action, and thus Defendants Sallie Mae and USA Funds have filed their Motion for Judgment on the Pleadings early enough to not delay trial.  As such, this Court **DENIES** Plaintiff's Motion to Strike Pursuant to Fed. R. Civ. P. 12(f).

### PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

Plaintiff seeks leave from this Court to file a Second Amended Complaint to add state law claims pursuant to the Uniform Deceptive Trade Practices Act, O.C.G.A. § 10-

AO 72A
(Rev.8/82)

1-370 et seq., and the Fair Business Practices Act, O.C.G.A. § 10-1-390 et seq., and for damages for violations of Titles 23 and 51 of O.C.G.A.

Rule 15 of the Federal Rules of Civil Procedure provides that a plaintiff may amend his or her complaint once as a matter of course within twenty-one days after serving it or within twenty-one days after the earlier of service of the responsive pleading or service of a motion under Rule 12(b), (e), or (f). Fed. R. Civ. P. 15(a)(1). Thereafter, a plaintiff may amend his or her complaint only with the opposing party's written consent or the court's leave. Fed. R. Civ. P. 15(a)(2). District courts are encouraged to "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). However, a district court is not required to allow an amendment if (1) there has been undue delay, bad faith, or dilatory motive by the plaintiff, or any repeated failures to cure deficiencies by previous amendments; (2) there is undue prejudice to the opposing party; or (3) if the amendment is futile. Bryant v. Dupree, 252 F.3d 1161, 1163 (11th Cir. 2001). An amendment is futile if "the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant." Cockrell v. Sparks, 510 F.3d 1307, 1310 (11th Cir. 2007) (citation omitted). Because Defendant's proposed second Amended Complaint would be properly dismissed, this Court denies Plaintiff's motion for leave to file a second Amended Complaint.

30

Plaintiff's proposed second Amended Complaint attempts to assert claims pursuant to the FCRA and the FDCPA. As with Plaintiff's first Amended Complaint, Plaintiff's proposed second Amended Complaint fails to state a plausible claim under either the FCRA or the FDCPA. In the proposed second Amended Complaint, Plaintiff does not set forth any additional factual allegations to show that any Defendant violated the FCRA by failing to adhere to their responsibilities pursuant to 15 U.S.C. § 1681s-2(b)(1), such as failing to conduct an investigation of the disputed information, failing to review the information in the notice from the credit bureaus, or failing to report the results of an investigation to the credit bureau. Likewise, Plaintiff does not provide any additional facts in his proposed second Amended Complaint to suggest that any Defendant meets the statutory definition of "debt collector" under the FDCPA or that he was the object of collection activity arising from a consumer debt. Thus, allowing Plaintiff to amend his FCRA and FDCPA claims would be futile.

Allowing Plaintiff to amend his Complaint to add state law claims also would be futile because all but one of the state law claims Plaintiff seeks to add are preempted by the FCRA. Section 1681t(b)(1)(F) of the FCRA states: "No requirement or prohibition may be imposed under the laws of any State–(1) with respect to any subject matter regulated under–   . . . (F) section1681s-2 of this title, relating to the responsibilities

31

of persons who furnish information to consumer reporting agencies."  15 U.S.C. §

1681t(b)(1)(F).  This Court has held that section 1681t(b)(1)(F) preempts both state

statutory and common law claims, so long as the legal duty giving rise to the claim

relates to the subject matter regulated under section 1681s-2.  Spencer v. Nat'l City

Mortgage, 831 F. Supp. 2d 1353, 1360 (N.D. Ga. 2011).

Georgia's Uniform Deceptive Trade Practices Act, O.C.G.A. § 10-1-370 et seq.,

"makes certain types of conduct unlawful when carried out in the course of a person's

'business, vocation, or occupation.'"  Int'l Brominated Solvents Ass'n v. Am.

Conference of Governmental Industrial Hygienists, Inc., 393 F. Supp. 2d 1362, 1383

(M.D. Ga. 2005); see also O.C.G.A. § 10-1-372.  Georgia's Fair Business Practices Act,

O.C.G.A. § 10-1-390 et seq., was enacted "to protect consumers and legitimate business

enterprises from unfair or deceptive practices in the conduct of any trade or commerce

in part or wholly in the state."  O.C.G.A. § 10-1-391(a).

In the proposed second Amended Complaint, Plaintiff alleges Defendants violated

the Uniform Deceptive Trade Practices Act and the Fair Business Practices Act because:

they caused confusion and misunderstanding by certifying false information to the credit

reporting agencies and projecting a negative, inaccurate image of Plaintiff without

32

justification;[8] they caused confusion and misunderstanding as to Plaintiff's affiliation, connection, or association with them by misrepresenting that they are the holders of a note that obligates Plaintiff in the repayment of an alleged debt when they are not;[9] they falsely represent that the information they provided to the credit reporting agencies has approval, characteristics, or ingredients that it does not have by falsely claiming to be in possession of legal documentation that validates an alleged debt owed to them by Plaintiff when they transmit inaccurate information to the credit reporting agencies each

---

[8] According to Plaintiff, this alleged conduct violates O.C.G.A. § 10-1-372(a)(2), which prohibits a person from engaging in "a deceptive trade practice when, in the course of his business, vocation, or occupation, he . . .[c]auses likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services," and O.C.G.A. § 10-1-393(b)(2), which makes "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" that "[c]aus[e] actual confusion or actual misunderstanding as to the source, sponsorship, approval, or certification of goods or services" unlawful.

[9] According to Plaintiff, this alleged conduct violates O.C.G.A. § 10-1-372(a)(3), which prohibits a person from engaging in "a deceptive trade practice when, in the course of his business, vocation, or occupation, he . . .[c]auses likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by another," and O.C.G.A. § 10-1-393(b)(3), which makes "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" that "[c]aus[e] actual confusion or actual misunderstanding as to affiliation, connection, or association with or certification by another" unlawful.

33

month;[10] they disparage Plaintiff without justification by false and misleading representation of fact through the inaccurate information they transmit to the credit reporting agencies each month.[11] (Proposed Second Am. Compl., Docket Entry [122-1], ¶ 43). Plaintiff also seeks equitable relief for Defendants' alleged fraud pursuant to O.C.G.A. §§ 23-2-52, 23-2-53, 23-2-56. Plaintiff contends that each of Defendants' electronic transmissions to the credit reporting agencies that contained false, inaccurate

---

[10] According to Plaintiff, this alleged conduct violates O.C.G.A. § 10-1-372(a)(5), which prohibits a person from engaging in "a deceptive trade practice when, in the course of his business, vocation, or occupation, he . . . [r]epresents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have," and O.C.G.A. § 10-1-393(b)(5), which makes "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" that "[r]epresent[] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have" unlawful.

[11] According to Plaintiff, this alleged conduct violates O.C.G.A. § 10-1-372(a)(8), which prohibits a person from engaging in "a deceptive trade practice when, in the course of his business, vocation, or occupation, he . . . [d]isparages the goods, services, or business of another by false or misleading representation of fact," and O.C.G.A. § 10-1-393(b)(8), which makes "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" that "[d]isparag[e] goods, services, or business of another by false or misleading representation" unlawful.

34

information meets definition of fraud set forth in O.C.G.A. § 23-2-52;[12] each Defendants' failure to communicate to the consumer reporting agencies that Plaintiff's alleged accounts were inaccurate and could not be verified upon receiving notice of a dispute from the agencies meets the definition of fraud set forth in O.C.G.A. § 23-2-53;[13] and Defendants Sallie Mae and USA Funds's act of submitting a claim to the U.S. Department of Education for an alleged fraudulent debt that Plaintiff contends he did not owe, which resulted in a levy against Plaintiff's federal tax return proceeds, constitutes fraud as set forth in O.C.G.A. §§ 23-2-56.[14] Lastly, Plaintiff seeks damages for gross negligence pursuant to O.C.G.A. § 51-1-6 for Defendants' failure to exercise ordinary care and slight diligence when they repeatedly communicated false, inaccurate information in response to the notifications of dispute they received from the consumer

---

[12] O.C.G.A. § 23-2-52 states: "Misrepresentation of a material fact, made willfully to deceive or recklessly without knowledge and acted on by the opposite party or made innocently and mistakenly and acted on by the opposite party, constitutes legal fraud."

[13] O.C.G.A. § 23-2-53 states: "Suppression of a material fact which a party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case."

[14] O.C.G.A. § 23-2-56 states: "Fraud may be consummated by signs or tricks, or through agents employed to deceive, or by any other unfair way used to cheat another."

reporting agencies; libel pursuant to O.C.G.A. § 51-5-1(a) for reporting false information about Plaintiff's creditworthiness to the credit reporting agencies, severely injuring Plaintiff's reputation; and harassment pursuant to O.C.G.A. § 51-7-80(8)(A) and (B) for continuing to report false, inaccurate information to the consumer reporting agencies without substantial justification.

Plaintiff's proposed state law claims, with the exception of the claim about the fraudulent reimbursement submitted to the United States Department of Education, all arise from and are related to Defendants' alleged failure, as furnishers of information, to properly report information to the three credit bureaus about Plaintiff's accounts. Congress has decided that regulating the responsibilities of furnishers of information who report information to consumer reporting agencies is the exclusive domain of the FCRA. As a result, these state law claims are preempted by the FCRA. See, e.g., Howard v. DirecTV Group, Inc., No. CV 109-156, 2012 WL 1850922, at *7 (S.D. Ga. May 21, 2012) (concluding state law defamation claim was preempted by section 1681t(b)(1)(F)).

With respect to Plaintiff's fraudulent reimbursement claim, the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b) applies. Specifically, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances

36

constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Plaintiff's fraudulent reimbursement claim falls short of meeting the Fed. R. Civ. P. 9(b) pleading standard. To state a cause of action for fraud under Georgia law, a plaintiff must adequately allege: (1) a false representation, (2) scienter (i.e., intent or knowledge of wrongdoing), (3) inducement, (4) reliance, and (5) injury resulting from the reliance on the false representation. Little v. Fleet Fin., 481 S.E.2d 552, 556 (Ga. App. 1997). Although Plaintiff does allege an injury from the alleged false representation (the levy against his federal tax proceeds), Plaintiff does not provide any facts to show why the submission of the reimbursement claim was a false representation or how Defendants Sallie Mae and USA Funds knew that submitting the reimbursement claim would be a false representation. From the face of Plaintiff's proposed second Amended Complaint, there is no basis from which this Court to infer that Defendants Sallie Mae and USA Funds are liable for the misconduct Plaintiff alleges. Therefore, allowing Plaintiff's to file a second Amended Complaint to add this claim would be futile. Accordingly, the undersigned **DENIES** Plaintiff's Motion for Leave to File Second Amended Complaint.

37

### PLAINTIFF'S MOTION FOR DECLARATORY JUDGMENT, CERTIFICATION OF REAL PARTIES IN INTEREST, AND FOR A MORE DEFINITE STATEMENT

Plaintiff asks this Court for a declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201(a), and the Uniform Declaratory Judgment Act, O.C.G.A. § 9-4-1 et seq. Plaintiff also moves for an order certifying the real parties in interest pursuant to Rule 17(a) of the Federal Rules of Civil Procedure and for a more definite statement from Defendants pursuant to Rule 12(e) of the Federal Rules of Civil Procedure. Because the undersigned recommends that Plaintiff's Complaint and Amended Complaint be dismissed and denies Plaintiff's motion for leave to file a second Amended Complaint, this Court **DENIES AS MOOT** Plaintiff's Motion for Declaratory Judgment, Certification of Real Parties in Interest, and for a More Definite Statement.

### CONCLUSION

For the reasons set forth above, the undersigned **RECOMMENDS** the following:

1. Defendant HSBC Bank USA, N.A.'s Motion to Dismiss be **GRANTED**, (Docket Entry [92].

2. Defendant First Premier Bank's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) be **GRANTED**, (Docket Entry [94]);

38

3.     Defendants Bluestem Brands, Inc. d/b/a Fingerhut and Meta Financial Group, Inc.'s Motion to Dismiss be **GRANTED**, (Docket Entry [98]);

4.     Defendants Sallie Mae, Inc. and United Student Aid Funds, Inc.'s Motion for Judgment on the Pleadings be **GRANTED**, (Docket Entry [116]).

Additionally, the undersigned **ORDERS** the following:

1.     Plaintiff's Motion to Strike and Dismiss Redundant Motions Pursuant to Rule 12(f) is **DENIED**, (Docket Entry [100]);

2.     Plaintiff's Request for Judicial Notice in Regard of Defendants Sallie Mae, Inc. and United Student Aid Funds, Inc. and Reply to Answer to Complaint is **DENIED**, (Docket Entry [103]);

3.     Plaintiff's Motion for Reconsideration and Response in Opposition to Motions to Stay Proceedings is **DENIED AS MOOT**, (Docket Entry [104]);

4.     Plaintiff's Motion to Add Party Defendants Webbank, Kelly Barnett, and Mark Howard is **DENIED**, (Docket Entry [107]);

5.     Defendants Sallie Mae, Inc. and United Student Aid Funds, Inc.'s Motion to Stay is **DENIED AS MOOT**, (Docket Entry [117]);

6.     Plaintiff's Motion to Strike Pursuant to Fed. R. Civ. P. 12(f) is **DENIED**, (Docket Entry [119]);

AO 72A
(Rev.8/82)

7.   Plaintiff's Motion for Leave to File Second Amended Complaint is **DENIED**, (Docket Entry [122]); and

8.   Plaintiff's Motion for Declaratory Judgment, Certification of Real Parties in Interest, and For a More Definite Statement is **DENIED AS MOOT**, (Docket Entry [130]).

**IT IS SO ORDERED AND REPORTED AND RECOMMENDED**, this 9 day of May, 2013.

LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE

40